UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LANCE MUSSELMAN, *et al.*,<br><br>     Plaintiffs,<br><br>     v.<br><br>MARK NITCHMAN, *et al.*,<br><br>     Defendants. | CASE NO.  C04-0984RSM<br><br>MEMORANDUM ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT NITCHMAN'S MOTION FOR SUMMARY JUDGMENT |

## I. INTRODUCTION

This matter comes before the Court on defendant Nitchman's second Motion for Summary Judgment. (Dkt. #67). Defendants argue that plaintiffs have failed during discovery to produce any evidence in support of their claims against defendant Nitchman, and therefore seek dismissal of plaintiffs' § 1983 claims, negligent infliction of emotional distress claim, Washington state discrimination claim, wrongful discharge claim, and breach of contract claim. Defendant also moves pursuant to Local Rule CR 7(g) to strike the affidavits in support of plaintiffs' response to the instant motion, arguing, *inter alia*, that they contain inadmissible evidence because they are not made with personal knowledge and because they contain

MEMORANDUM ORDER
PAGE - 1

1  documents that have not been identified or authenticated. (Dkt. #84).

2  Plaintiffs argue that they have raised genuine issues of material fact, and therefore,
3  summary judgment is not appropriate. (Dkt. #72).

4  For the reasons set forth below, the Court agrees in part with plaintiff, and finds that
5  defendants' motion should be GRANTED IN PART and DENIED IN PART.

## II.  DISCUSSION.

### A.  Background

In this lawsuit, plaintiffs, one former and one current employee of the Washington State Ferry ("WSF") system, claim that they were either fired or disciplined for speaking adversely against Special Projects undertaken by management. The claims by each plaintiff are discussed separately below.

Plaintiff Musselman was an employee of WSF for 20 years before being terminated in 2002. He primarily worked as an oiler. Between June of 2002 and August of 2002, Musselman apparently heard that defendant Broxon, one of Musselman's managers, was involved in a Special Project pertaining to lube oil used in the ferry engines. Musselman believed that the study was a waste of public funds, and began questioning co-workers about the project, and making comments that the project was a waste of money. Musselman alleges that after defendant Allen, another WSF manager, heard him asking such questions, Allen began harassing him at work. Musselman also apparently heard from a co-worker that Allen said he wanted to fire Musselman for asking questions. Musselman also alleges that Allen tried to discredit him among the union members, calling him a "crazy Vietnam vet," and other derogatory names.

During the same time period, defendant Nitchman, a senior manager at WSF, brought discipline charges against Musselman. Musselman alleges these charges were brought as retaliation for speaking out against the Special Project. Defendant Nitchman claims that the charges were brought against Musselman as a result of a prior disciplinary hearing that occurred

before Musselman began questioning the Special Project. Musselman was terminated on or about October 25, 2002.

Musselman was subsequently informed by the union that they would not represent him in a grievance procedure. Allen, Nitchman and Broxon were all senior union members at that time, as well as WSF managers. It appears from the record that the six-month union grievance procedure expired, and Musselman did not make a grievance. However, Musselman submitted an unfair labor practice complaint to the Washington State Marine Employees Commission ("MEC"). The MEC apparently told Musselman it would only hear his complaint if he removed the claim that the WSF managers were also senior members of the union. Musselman determined that pursuing any claim with the MEC would be futile, and declined to pursue the complaint. He then submitted a tort claim form to the State of Washington, and subsequently filed this lawsuit.

Plaintiff Newmon was hired as an oiler by WSF in December of 2000. At some point, Newmon also learned of defendant Broxon's lube oil Special Project, and commented that the study appeared to be a waste of public funds because a similar study had already been completed by the oil companies and engine manufacturers. Newmon also questioned various co-workers about how the study was being conducted. Broxon learned that Newmon had been asking questions and allegedly assigned him to poor work assignments as a result. Newmon alleges that Broxon also threatened him, stating that he should not speak against the Special Project because "things can happen to people, things can happen to their family, and their house can get burned down, because it is easy to find out where someone lives." Broxon also apparently told Newmon about other WSF employees that had questioned Special Projects, who had been demoted or injured as a result.

Newmon alleges that one day when he was being threatened, he decided he could no longer work with Broxon because he feared for his safety, so he requested a replacement worker

MEMORANDUM ORDER
PAGE - 3

for his shift, and, when that replacement arrived, he left the ferry. Broxon then apparently contacted defendant Nitchman, who charged Newmon with leaving his post and being disrespectful to his supervisor. Newmon alleges that these charges were brought in retaliation for speaking against the Special Project. Defendants claim that Newmon's discipline resulted from failing to finish his shift, and walking away from his job.

Newmon then contacted the Washington State Patrol ("WSP") about the threats. The WSP apparently informed him that he should speak with his union. Newmon determined that contacting his union would be futile since his managers were also senior members. The WSF staff chief apparently made a cursory investigation of the incident, and Broxon admitted to making a statement to Newmon about a different employee who had questioned Special Projects. Newmon subsequently participated in two disciplinary hearings, and eventually was suspended for two weeks without pay, and given an adverse employment letter. Newmon then filed a complaint with the Washington State Human Rights Commission. He requested a right-to-sue letter, which was granted by the Commission. Newmon then submitted a tort claim form to the State of Washington, followed by this lawsuit. Newmon remains an employee of WSF.

In their amended complaint, plaintiffs have also presented facts related to a pattern and practice of retaliation against other employees who had previously spoken against Special Projects, which resulted in harassment and false adverse employment complaints.

Plaintiffs have alleged seven causes of action, including violation of their right to free speech pursuant to 42 U.S.C. § 1983, violation of procedural due process based on structural bias pursuant to 42 U.S.C. § 1983, negligent infliction of emotional distress under Washington State common law, Washington State common law outrage, violations of Washington State's discrimination statute, wrongful discharge under Washington State common law, and breach of contract under Washington State contract law. They request an award and damages in an amount to be determined by the Court.

MEMORANDUM ORDER
PAGE - 4

On December 2, 2004, defendants moved for summary judgment based on qualified immunity. (Dkt. #19).  The Court declined to grant summary judgment, finding that plaintiffs had engaged in constitutionally-protected speech, that WSF's interests had not outweighed Newmon's or Musselman's interest in expressing themselves, that defendants were on fair notice that plaintiffs' speech was constitutionally protected and the law was clearly established at the time of plaintiffs' conduct, that defendants' actions were not objectively reasonable, and therefore, qualified immunity does not apply as a defense in this case.  (Dkt. #42).

Defendants have now separately moved for summary judgment in favor of all of the defendants, arguing that plaintiff has failed to produce any evidence during discovery, including witnesses, testimony, or physical evidence, that would raise any genuine issue of material fact requiring a trial in this case.

**B.  Summary Judgment Standard**

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  The Court must draw all reasonable inferences in favor of the non-moving party.  *See F.D.I.C. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992), *rev'd on other grounds,* 512 U.S. 79 (1994).  The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial.  *See Anderson*, 477 U.S. at 257.  Mere disagreement, or the bald assertion that a genuine issue of material fact exists, no longer precludes the use of summary judgment.  *See California Architectural Bldg. Prods., Inc., v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987).

Genuine factual issues are those for which the evidence is such that "a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248.  Material facts are

MEMORANDUM ORDER
PAGE - 5

those which might affect the outcome of the suit under governing law. *See id.* In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *O'Melveny & Meyers*, 969 F.2d at 747).

### C. Motion to Strike Affidavits Under Local Rule 7(g)

As a threshold matter, the Court first addresses defendant's request to strike the affidavits of Marable, Newmon, Stell, Kuykendall and Hart, which were submitted in support of plaintiffs' response to the instant motion. (*See* Dkt. #84 at 2). Defendant argues that the affidavits in question do not meet the criteria set forth in Rule 56(e) of the Federal Rules of Civil Procedure, which states that affidavits in support of, or opposition to, summary judgment "shall be made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e).

The Ninth Circuit Court of Appeals has often rejected statements contained in affidavits that are based on information and belief, rather than on personal knowledge. *See, e.g., Columbia Pictures Indus., Inc. v. Professional Real Estate Investors, Inc.*, 944 F.2d 1525, 1529 (9th Cir. 1991), *aff'd*, 508 U.S. 49 (1993). Likewise, courts have determined that where it is not self-evident "from his job title or the activities which he describes in the affidavit" an affiant is not competent to testify to the matters stated within his affidavit, and striking such statements is appropriate. *See, e.g., Ramada Franchise Systems, Inc. v. Tresprop, Ltd.*, 75 F. Supp.2d 1205, 1209 (D. Kan. 1999). The Court has reviewed the affidavits and declarations at issue in this case, and finds as follows:

*1. Mr. Newmon's Affidavit*

In his affidavit, Mr. Newmon has not sworn that the statements contained therein are based on personal knowledge. Rather, many of his statements begin with the qualifier "I

MEMORANDUM ORDER
PAGE - 6

believe." Accordingly, those sentences, contained in paragraph numbers 3, 5, 8, 14, 16 and 17, are hereby STRICKEN, and the Court will not consider the statements when making its decision below. In addition, it is not evident from Mr. Newmon's job description as an oiler aboard the Walla Walla, or from the activities which he describes, that he is competent to testify to Mr. Broxon's employment status or special projects work, or to Mr. Kathlean's employment aboard the Walla Walla. Accordingly, the Court also STRIKES the second sentence of paragraph 2, the first sentence of paragraph 7, and paragraphs 3, 5 and 8 in their entirety. The remainder of Mr. Newmon's affidavit appears to be based on his personal knowledge of, or involvement in, the activity he is describing, and will not be stricken.

*2. Mr. Stell's Declaration*

The majority of Mr. Stell's declaration appears to be based on his personal knowledge of, or involvement in, the activity he is describing, and will not be stricken. However, the Court will STRIKE the last sentence of paragraph 4, which is based only on Mr. Stell's "belief."

*3. Mr. Kuykendall's Declaration*

The majority of Mr. Kuykendall's declaration appears to be based on his personal knowledge of, or involvement in, the activity he is describing, and will not be stricken. However, the Court will STRIKE the last sentence of paragraph 4, which is based only on Mr. Kuykendall's "belief."

*4. Mr. Marable's Declaration*

Much of Mr. Marable's declaration is based on "anecdotal evidence," or statements "heard" from other persons. It is not evident from Mr. Marable's job description as a chief, or from the activities which he describes, that he is competent to testify to much of the evidence he attempts to introduce with those statements. Moreover, a substantial portion of Mr. Marable's declaration is based on inadmissible hearsay. Accordingly, the Court STRIKES all of paragraph 3 except for the first sentence, those portions of paragraph 6 that pertain to Nitchman's actions

and the Oil Eater 99, sentence one of paragraph 8, sentence one of paragraph 12, and paragraphs 4, 10, 13, 14 and 15 in their entirety.

*5. Mr. Hart's Declaration*

Mr. Hart's declaration is made in his capacity as plaintiffs' attorney in this case, and presents several documents as evidence for this Court's consideration. Mr. Hart states, under the penalty of perjury, that each document is a true and correct copy. It is not clear from the declaration whether the statements are based on personal knowledge; however, many of the documents are those created by Mr. Hart, or submitted to this Court in their original forms by Mr. Hart. (*See* Exs. 1, 2, 3 and 8). In addition, Mr. Hart has submitted copies of documents he received in response to his own discovery requests. (*See* Exs. 4, 5 and 6). Accordingly, the paragraphs related to those exhibits will not be stricken. However, it appears that there are several documents to which it is not evident from Mr. Hart's affidavit that he is competent to testify. Accordingly, paragraphs 7, 8 and 10, along with the corresponding Exs. 6, 7 and 9, shall be STRICKEN in their entirety. *See American Rock Salt Co., LLC v. Norfolk Southern*, 180 F. Supp.2d 420, 423 (W.D.N.Y. 2001) (explaining that an attorney's affidavit that is not based on personal knowledge carries no weight and should be disregarded); *Foster v. Allied Signal, Inc.*, 98 F. Supp.2d 1261, 1265 (D. Kan. 2000) (striking an attorney affidavit that contained hearsay statements and unauthenticated documents).

**D. Alleged § 1983 Violations**

Plaintiffs first allege that defendant Nitchman violated their civil rights under 42 U.S.C. § 1983 by acting under "a policy, practice, or custom of harassing, threatening, and subjecting to adverse employment actions employees who stated that one or more of the Special Projects are a waste of time." (Dkt. #63 at 11). Specifically, plaintiffs allege that defendant Nitchman:

> (1) . . . directly participated in the violations of Plaintiffs' rights, (2) . . . failed to remedy the Plaintiffs' rights after learning of them, (3) . . . created or maintained the policies or customs under which unconstitutional practices occurred, (4) . . . exercised gross negligence in supervising Broxon and Allen,

MEMORANDUM ORDER
PAGE - 8

and (5) . . . exhibited deliberate indifference by failing to act on information indicating that unconstitutional violations were occurring.

(Dkt. #63 at 11-12). Plaintiffs further allege that defendant Nitchman:

> violated . . . Plaintiffs' procedural due process rights under the Fourteenth Amendment by acting as decisionmaker for bringing the charges against Plaintiffs and acting as the decisionmaker at the disciplinary hearings of retaliatory disciplinary charges brought after Plaintiffs stated one or more Special Projects appeared to be a waste of funds. Nitchman receives direct and/or indirect benefits for approving and/or not objecting to the Special Projects; and/or manages the Special Projects. Nitchman had a direct, personal, and substantial pecuniary interest in the proceedings. Nitchman also had a strong motive to rule in a way that would aid the institution because of his institutional responsibilities.

(Dkt. #63 at 12-13).

Defendant argues that plaintiffs are unable to show that he was personally involved with any of the alleged constitutional deprivations, or that he knew any were occurring, and therefore urges the Court to dismiss these claims against him.

In order to maintain a civil rights action under 42 U.S.C. § 1983 against a state official, plaintiffs must demonstrate that such official played an affirmative part in the alleged deprivation of constitutional rights. *Rizzo v. Goode*, 423 U.S. 362, 377 (1976); *Tribble v. Gardner*, 860 F.2d 321, 327 (9th Cir. 1998); *King v. Atiyeh*, 814 F.2d 565 (9th Cir. 1987). A defendant may be found to have been "personally involved" in a constitutional deprivation if he or she: (1) directly participated in the infraction; (2) failed to remedy a wrong after learning of the violation; (3) created or allowed a policy to continue under which the violations occurred; or (4) was grossly negligent in managing the subordinates who caused the unlawful condition or event. *Williams v. Smith*, 781 F.2d 319 (2nd Cir. 1986).

In the instant case, Nitchman's direct involvement with plaintiffs appears to be limited to conducting the discipline hearings, which plaintiffs allege were held in retaliation for questioning defendant Broxon's lube oil Special Project. Defendant Nitchman now argues, as he did previously, that the evidence demonstrates that employment decisions with respect to both

MEMORANDUM ORDER
PAGE - 9

Newmon and Musselman were taken not for retaliatory reasons, but for other valid purposes. Specifically, in Musselman's case, defendant Nitchman argues that Musselman's employment was terminated as a result of a disciplinary proceeding that took place prior to his speaking out against Special Projects. In Newmon's case, defendant Nitchman argues that Newmon's disciplinary action resulted from walking off the job and his failure to finish his shift.

However, the Court rejected this argument in its prior order on defendants' motion for summary judgment. (*See* Dkt. #42 at 11-12). As the Ninth Circuit Court of Appeals explained in *Ceballos v. Garcetti*, 361 F.3d 1168 (9th Cir. 2004), proof of motive is a question of fact that should be left for trial. "It is possible that they will be able to show at trial that the adverse acts [plaintiff] alleges were not taken in retaliation for his constitutionally protected speech. However, 'as with proof of motive in other contexts, this element of a First Amendment retaliation suit . . . involves questions of fact that normally should be left for trial.'" *Ceballos*, 361 F.3d at 1181 (citations omitted). Accordingly, the Court agrees with plaintiff that Cause of Action One should not be dismissed.

As for plaintiffs' Cause of Action Two, the Court is not convinced that plaintiffs have raised any genuine issue of material fact with regard to defendant Nitchman's actions. Plaintiffs essentially allege that defendant Nitchman violated their civil rights during the disciplinary hearings he conducted by his receipt of direct or indirect benefits from the Special Projects, and because of his direct, personal and substantial pecuniary interests in the disciplinary proceedings. Plaintiffs argue that defendant Nitchman had both a clear structural bias and personal interest and a structural bias and institutional interest in the outcome of the disciplinary hearings. Defendant Nitchman argues that plaintiffs have produced no evidence that he was influenced during the proceedings by anything other than the evidence that he heard. The Court agrees.

While plaintiffs have produced a number of documents purporting to demonstrate defendant Nitchman's biases, many of those documents have been stricken, *supra*, because

plaintiffs' attorney does not have the requisite personal knowledge to testify to the validity of those documents, and many other of the documents are simply irrelevant to plaintiffs' arguments. For example, whether defendant Nitchman was responsible for the accounting for his department, whether he was a member of the union and was eligible for Special Project funds, and whether he was interviewed by the Bremerton Sun, do not in and of themselves prove personal or institutional bias. Finally, the allegation that defendant Nitchman has entered into quid pro quo agreements with employees on Special Projects is mere speculation at this point, and many of the statements in support of that allegation have also been stricken. Accordingly, the Court finds that plaintiffs may not maintain a claim of structural bias against defendant Nitchman.

### E. Negligent Infliction of Emotional Distress

In their Third Cause of Action, plaintiffs assert the state law claim of negligent infliction of emotional distress against defendant Nitchman. In order to succeed on this claim, plaintiffs must prove objective symptoms of emotional distress, and they must assert a separate factual basis for their claim than that of the retaliation claim. In *Haubry v. Snow*, 106 Wn. App. 666 (2001), the Washington State Court of Appeals laid out the standard for a negligent infliction of emotional distress claim, explaining that:

> [a]n employee may recover damages for emotional distress in an employment context, but only if the factual basis for the claim is distinct from the factual basis for the discrimination claim.
>
> Here, there is no separate compensable claim because the factual basis for the emotion distress claim is the same as the sexual harassment or discrimination claim.
> . . .
>
> A claim for the negligent infliction of emotional distress also requires that Haubry establish that the emotional distress is manifested by objective symptoms. To satisfy the objective symptomatology requirement established in the case of *Hunsley v. Giard*, Haubry's emotional distress must be susceptible to medical diagnosis and proved through medical evidence.

*Haubry*, 106 Wn. App. at 678.

MEMORANDUM ORDER
PAGE - 11

In the instant case, the factual basis of plaintiffs' negligent infliction of emotional distress claim is the same as the factual basis for their retaliation claim - namely that defendant Nitchman took adverse employment actions as a result of plaintiffs' inquiries in the lube oil special project. (*See* Dkt. #72 at 18).  Moreover, plaintiffs have produced no medical evidence of objective symptoms of such distress.  Plaintiff Musselman has provided no proof that he obtained medical or other treatment, nor has he provided any diagnosis upon which he bases his claim.  Plaintiff Newmon has produced only one medical report and a medical bill, which have not been authenticated.  Therefore, the Court finds that neither plaintiff has raised a genuine issue of material fact in regard to their claim, and summary judgment in favor of defendant is appropriate.

**F. Alleged RCW 49.60 Violations**

Plaintiffs' Fifth Cause of Action asserts violations by defendant Nitchman under RCW 49.60, Washington State's law against discrimination.  Specifically, plaintiffs allege that defendant Nitchman violated RCW 49.60.210(2).  That statute states in relevant part, "[i]t is an unfair practice for a government agency or government manager or supervisor to retaliate against a whistleblower as defined in chapter 42.40 RCW."  RCW 49.60.210(2).  RCW 42.40.020 defines a whistleblower as:

> . . . an employee who in good faith reports alleged improper governmental action to the auditor, initiating as investigation under RCW 42.40.040.  For purposes of the provisions of this chapter and chapter 49.60 RCW relating to reprisals and retaliatory action, the term "whistleblower" also means: (a) An employee who in good faith provides information to the auditor in connection with an investigation under RCW 42.40.040 and an employee who is believed to have reported improper governmental action to the auditor or to have provided information to the auditor in connection with an investigation under RCW 42.40.040 but who, in fact, has not reported such action or provided such information; or (b) an employee who in good faith identifies rules warranting review or provides information to the rules review committee, and an employee who is believed to have identified rules warranting review or provided information to the rules review committee but who, in fact, has not done so.

RCW 42.40.020(8).

MEMORANDUM ORDER
PAGE - 12

Defendant Nitchman argues that plaintiffs' claim should be dismissed because they have provided no evidence that they are statutory whistleblowers. It appears that, in particular, defendant Nitchman believes plaintiffs have not provided evidence that they reported any information to the office of the State Auditor. The Court finds this argument misguided in regard to plaintiff Musselman. Plaintiff Musselman has declared that he made several telephone calls to the Auditor's office regarding Special Projects. Indeed, the Court took note of this fact in its prior order denying summary judgment. (Dkt. #42 at 9). However, the Court agrees that Newmon has not proven that he is a statutory whistleblower. Plaintiff Newmon merely alleges that because defendant Broxon told him to stop talking about the Special Projects, he is an employee believed to have made reports to the State Auditor. There is nothing in defendant Broxon's statement that even hints he believed plaintiff Newmon had been speaking to the auditor. Therefore, the Court finds that plaintiff Newmon's whistleblower claim must be dismissed.

### G. Wrongful Discharge

Plaintiffs' Cause of Action Six alleges that defendant Nitchman discharged plaintiff Musselman in violation of public policy and without just cause. Defendant Nitchman argues that this claim should be dismissed because plaintiff Musselman is not a statutorily defined whistleblower under Washington State law. The Court has already rejected that argument, *supra*, and therefore finds that Cause of Action Six should not be dismissed.

### H. Breach of Contract

Finally, plaintiffs' Cause of Action Seven asserts a breach of contract claim against defendant Nitchman, alleging that the plaintiffs were beneficiaries of a collective bargaining agreement between the WSF and the Marine Engineers Beneficial Association ("MEBA"), the union to which plaintiffs belong, and Nitchman breached that agreement by allowing members of the WSF management to maintain their active membership in the MEBA.

1    Defendant Nitchman argues that the contract in question was not formed between

2 himself, individually, and the MEBA. Rather, the contract was formed between the WSF, who

3 is not a party to this litigation, and the MEBA. Thus, there is no duty under the contract due to

4 plaintiffs by defendant Nitchman in his individual capacity.

5    Plaintiff answers that defendant Nitchman materially breached the collective bargaining

6 agreement for his own personal benefit, and that he violated the duty of good faith and fair

7 dealing by taking actions for his individual benefit and by causing the MEBA and WSF to

8 protect members of management who were MEBA members and who were involved in Special

9 Projects. The Court is not persuaded. Plaintiffs present no evidence in support of these bare

10 and conclusory allegations. Moreover, plaintiffs have sued defendant Nitchman only in his

11 individual capacity, not in his capacity as the Director of Fleet and Maintenance Preservation.

12 As noted above, defendant Nitchman did not form the contract in question with the MEBA in

13 his individual capacity. Therefore, the Court finds that plaintiffs may not maintain their breach

14 of contract claim against defendant Nitchman.

## III. CONCLUSION

16    Having reviewed defendant Nitchman's second motion for summary judgment (Dkt.

17 #67), plaintiffs' opposition (Dkt. #72), defendant's reply (Dkt. #84), the declarations and

18 evidence in support of those briefs, and the remainder of the record, the Court hereby GRANTS

19 IN PART and DENIES IN PART defendant's motion for summary judgment (Dkt. #67) as

20 follows:

21    (1) Cause of Action One, which asserts a § 1983 claim of retaliation based on protected

22 speech under the First Amendment, remains pending against defendant Nitchman for the reasons

23 set forth above;

24    (2) Cause of Action Two, which asserts a § 1983 claim of employment discrimination

25 based on structural bias, is hereby DISMISSED against defendant Nitchman for the reasons set

1 forth above;

2     (3) Cause of Action Three, which asserts a claim for negligent infliction of emotion distress, is hereby DISMISSED against defendant Nitchman for the reasons set forth above;

    (4) Cause of Action Five, which asserts a retaliation claim for whistleblowing against defendant Nitchman, is DISMISSED IN PART, in that plaintiff Newmon may not assert such claim, but plaintiff Musselman's claim remains pending for the reasons set forth above;

    (5) Cause of Action Six, which asserts a claim of wrongful discharge of plaintiff Musselman, remains pending against defendant Nitchman for the reasons set forth above;

    (6) Cause of Action Seven, which asserts a claim for breach of contract, is DISMISSED against defendant Nitchman for the reasons set forth above;

The Clerk shall forward a copy of this Memorandum Order to all counsel of record.

DATED this _5_ day of July, 2005.

*(signature)*

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE