UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LANCE MUSSELMAN, *et al.*,<br><br>                Plaintiffs,<br><br>       v.<br><br>MARK NITCHMAN, *et al.*,<br><br>                Defendants. | CASE NO.  C04-0984RSM<br><br>ORDER GRANTING IN PART<br>AND DENYING IN PART<br>DEFENDANTS' MOTIONS FOR<br>SUMMARY JUDGMENT |

## I.  INTRODUCTION

This matter comes before the Court for consideration of the motions for summary judgment filed by defendants Thorne (Dkt. # 68), Allen (Dkt. # 69), and Broxon (Dkt. # 70).  On July 5, 2005, the Court issued a ruling on a similar motion by defendant Nitchman (Dkt. # 85).  For the convenience of the litigants, the Court restates here the portions of that Order which also apply to the pending motions for summary judgment.  Rulings on the three remaining summary judgment motions shall follow.

## II. DISCUSSION.

**A. Background**

In this lawsuit, plaintiffs, one former and one current employee of the Washington State

ORDER
PAGE - 1

Ferry ("WSF") system, claim that they were either fired or disciplined for speaking adversely against Special Projects undertaken by management. The claims by each plaintiff are discussed separately below.

Plaintiff Musselman was an employee of WSF for 20 years before being terminated in 2002. He primarily worked as an oiler. Between June of 2002 and August of 2002, Musselman apparently heard that defendant Broxon, one of Musselman's managers, was involved in a Special Project pertaining to lube oil used in the ferry engines. Musselman believed that the study was a waste of public funds, and began questioning co-workers about the project, and making comments that the project was a waste of money. Musselman alleges that after defendant Allen, another WSF manager, heard him asking such questions, Allen began harassing him at work. Musselman also apparently heard from a co-worker that Allen said he wanted to fire Musselman for asking questions. Musselman also alleges that Allen tried to discredit him among the union members, calling him a "crazy Vietnam vet," and other derogatory names.

During the same time period, defendant Nitchman, a senior manager at WSF, brought discipline charges against Musselman. Musselman alleges these charges were brought as retaliation for speaking out against the Special Project. Defendant Nitchman claims that the charges were brought against Musselman as a result of a prior disciplinary hearing that occurred before Musselman began questioning the Special Project. Musselman was terminated on or about October 25, 2002.

Musselman was subsequently informed by the union that they would not represent him in a grievance procedure. Allen, Nitchman and Broxon were all senior union members at that time, as well as WSF managers. It appears from the record that the six-month union grievance procedure expired, and Musselman did not make a grievance. However, Musselman submitted an unfair labor practice complaint to the Washington State Marine Employees Commission ("MEC"). The MEC apparently told Musselman it would only hear his complaint if he removed the claim that the WSF

ORDER
PAGE - 2

managers were also senior members of the union. Musselman determined that pursuing any claim with the MEC would be futile, and declined to pursue the complaint. He then submitted a tort claim form to the State of Washington, and subsequently filed this lawsuit.

Plaintiff Newmon was hired as an oiler by WSF in December of 2000. At some point, Newmon also learned of defendant Broxon's lube oil Special Project, and commented that the study appeared to be a waste of public funds because a similar study had already been completed by the oil companies and engine manufacturers. Newmon also questioned various co-workers about how the study was being conducted. Broxon learned that Newmon had been asking questions and allegedly assigned him to poor work assignments as a result. Newmon alleges that Broxon also threatened him, stating that he should not speak against the Special Project because "things can happen to people, things can happen to their family, and their house can get burned down, because it is easy to find out where someone lives." Broxon also apparently told Newmon about other WSF employees that had questioned Special Projects, who had been demoted or injured as a result.

Newmon alleges that one day when he was being threatened, he decided he could no longer work with Broxon because he feared for his safety, so he requested a replacement worker for his shift, and, when that replacement arrived, he left the ferry. Broxon then apparently contacted defendant Nitchman, who charged Newmon with leaving his post and being disrespectful to his supervisor. Newmon alleges that these charges were brought in retaliation for speaking against the Special Project. Defendants claim that Newmon's discipline resulted from failing to finish his shift, and walking away from his job.

Newmon then contacted the Washington State Patrol ("WSP") about the threats. The WSP apparently informed him that he should speak with his union. Newmon determined that contacting his union would be futile since his managers were also senior members. The WSF staff chief apparently made a cursory investigation of the incident, and Broxon admitted to making a

statement to Newmon about a different employee who had questioned Special Projects. Newmon subsequently participated in two disciplinary hearings, and eventually was suspended for two weeks without pay, and given an adverse employment letter. Newmon then filed a complaint with the Washington State Human Rights Commission. He requested a right-to-sue letter, which was granted by the Commission. Newmon then submitted a tort claim form to the State of Washington, followed by this lawsuit. Newmon remains an employee of WSF.

In their amended complaint, plaintiffs have also presented facts related to a pattern and practice of retaliation against other employees who had previously spoken against Special Projects, which resulted in harassment and false adverse employment complaints.

Plaintiffs have alleged seven causes of action, including violation of their right to free speech pursuant to 42 U.S.C. § 1983, violation of procedural due process based on structural bias pursuant to 42 U.S.C. § 1983, negligent infliction of emotional distress under Washington State common law, Washington State common law outrage, violations of Washington State's discrimination statute, wrongful discharge under Washington State common law, and breach of contract under Washington State contract law. They request an award and damages in an amount to be determined by the Court.

On December 2, 2004, defendants moved for summary judgment based on qualified immunity. (Dkt. #19). The Court declined to grant summary judgment, finding that plaintiffs had engaged in constitutionally-protected speech, that WSF's interests had not outweighed Newmon's or Musselman's interest in expressing themselves, that defendants were on fair notice that plaintiffs' speech was constitutionally protected and the law was clearly established at the time of plaintiffs' conduct, that defendants' actions were not objectively reasonable, and therefore, qualified immunity does not apply as a defense in this case. (Dkt. #42).

Defendants have now separately moved for summary judgment in favor of all of the defendants, arguing that plaintiff has failed to produce any evidence during discovery, including

witnesses, testimony, or physical evidence, that would raise any genuine issue of material fact requiring a trial in this case.

### B. Summary Judgment Standard

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The Court must draw all reasonable inferences in favor of the non-moving party. *See F.D.I.C. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992), *rev'd on other grounds,* 512 U.S. 79 (1994). The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial. *See Anderson*, 477 U.S. at 257. Mere disagreement, or the bald assertion that a genuine issue of material fact exists, no longer precludes the use of summary judgment. *See California Architectural Bldg. Prods., Inc., v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987).

Genuine factual issues are those for which the evidence is such that "a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248. Material facts are those which might affect the outcome of the suit under governing law. *See id.* In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *O'Melveny & Meyers*, 969 F.2d at 747).

### C. Motion to Strike Affidavits Under Local Rule 7(g)

As a threshold matter, the Court first addresses defendant's request to strike the affidavits of Marable, Newmon, Stell, Kuykendall and Hart, which were submitted in support of plaintiffs' response to the instant motion. (*See* Dkt. #84 at 2). Defendant argues that the affidavits in question do not meet the criteria set forth in Rule 56(e) of the Federal Rules of Civil Procedure,

PAGE - 5

which states that affidavits in support of, or opposition to, summary judgment "shall be made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e).

The Ninth Circuit Court of Appeals has often rejected statements contained in affidavits that are based on information and belief, rather than on personal knowledge. *See, e.g., Columbia Pictures Indus., Inc. v. Professional Real Estate Investors, Inc.*, 944 F.2d 1525, 1529 (9th Cir. 1991), *aff'd*, 508 U.S. 49 (1993). Likewise, courts have determined that where it is not self-evident "from his job title or the activities which he describes in the affidavit" an affiant is not competent to testify to the matters stated within his affidavit, and striking such statements is appropriate. *See, e.g., Ramada Franchise Systems, Inc. v. Tresprop, Ltd.*, 75 F. Supp.2d 1205, 1209 (D. Kan. 1999). The Court has reviewed the affidavits and declarations at issue in this case, and finds as follows:

*1. Mr. Newmon's Affidavit*

In his affidavit, Mr. Newmon has not sworn that the statements contained therein are based on personal knowledge. Rather, many of his statements begin with the qualifier "I believe." Accordingly, those sentences, contained in paragraph numbers 3, 5, 8, 14, 16 and 17, are hereby STRICKEN, and the Court will not consider the statements when making its decision below. In addition, it is not evident from Mr. Newmon's job description as an oiler aboard the Walla Walla, or from the activities which he describes, that he is competent to testify to Mr. Broxon's employment status or special projects work, or to Mr. Kathlean's employment aboard the Walla Walla. Accordingly, the Court also STRIKES the second sentence of paragraph 2, the first sentence of paragraph 7, and paragraphs 3, 5 and 8 in their entirety. The remainder of Mr. Newmon's affidavit appears to be based on his personal knowledge of, or involvement in, the activity he is describing, and will not be stricken.

ORDER
PAGE - 6

*2. Mr. Stell's Declaration*

The majority of Mr. Stell's declaration appears to be based on his personal knowledge of, or involvement in, the activity he is describing, and will not be stricken. However, the Court will STRIKE the last sentence of paragraph 4, which is based only on Mr. Stell's "belief."

*3. Mr. Kuykendall's Declaration*

The majority of Mr. Kuykendall's declaration appears to be based on his personal knowledge of, or involvement in, the activity he is describing, and will not be stricken. However, the Court will STRIKE the last sentence of paragraph 4, which is based only on Mr. Kuykendall's "belief."

*4. Mr. Marable's Declaration*

Much of Mr. Marable's declaration is based on "anecdotal evidence," or statements "heard" from other persons. It is not evident from Mr. Marable's job description as a chief, or from the activities which he describes, that he is competent to testify to much of the evidence he attempts to introduce with those statements. Moreover, a substantial portion of Mr. Marable's declaration is based on inadmissible hearsay. Accordingly, the Court STRIKES all of paragraph 3 except for the first sentence, those portions of paragraph 6 that pertain to Nitchman's actions and the Oil Eater 99, sentence one of paragraph 8, sentence one of paragraph 12, and paragraphs 4, 10, 13, 14 and 15 in their entirety.

*5. Mr. Hart's Declaration*

Mr. Hart's declaration is made in his capacity as plaintiffs' attorney in this case, and presents several documents as evidence for this Court's consideration. Mr. Hart states, under the penalty of perjury, that each document is a true and correct copy. It is not clear from the declaration whether the statements are based on personal knowledge; however, many of the documents are those created by Mr. Hart, or submitted to this Court in their original forms by Mr. Hart. (*See* Exs. 1, 2, 3 and 8). In addition, Mr. Hart has submitted copies of documents he

received in response to his own discovery requests. (*See* Exs. 4, 5 and 6). Accordingly, the paragraphs related to those exhibits will not be stricken. However, it appears that there are several documents to which it is not evident from Mr. Hart's affidavit that he is competent to testify. Accordingly, paragraphs 7, 8 and 10, along with the corresponding Exs. 6, 7 and 9, shall be STRICKEN in their entirety. *See American Rock Salt Co., LLC v. Norfolk Southern*, 180 F. Supp.2d 420, 423 (W.D.N.Y. 2001) (explaining that an attorney's affidavit that is not based on personal knowledge carries no weight and should be disregarded); *Foster v. Allied Signal, Inc.*, 98 F. Supp.2d 1261, 1265 (D. Kan. 2000) (striking an attorney affidavit that contained hearsay statements and unauthenticated documents).

### III. SUMMARY JUDGMENT MOTIONS

**A. Defendant Michael Thorne**

In their amended complaint (Dkt. # 63), plaintiffs have asserted three causes of action against defendant Michael Thorne, former CEO of the Washington State Ferries, and now retired. In Cause of Action One, for violation of plaintiffs' rights under the First and Fourteenth Amendments, brought pursuant to 42 U.S.C. § 1983, plaintiffs state that Thorne "failed to remedy the violation of Plaintiffs' rights after learning of them"; "created or maintained the policies or customs under which unconstitutional practices occurred"; "exercised gross negligence in supervising Broxon and Allen"; and "exhibited deliberate indifference by failing to act on information indicating that unconstitutional violations were occurring." Amended Complaint, ¶ 4.2. In moving for summary judgment, defendant Thorne contends that plaintiffs have no admissible evidence to assert a cause of action under § 1983 against him.

In order to state a cause of action under 42 U.S.C. § 1983, a plaintiff must allege that (a) the defendant acted under color of state law, and (b) the defendant's conduct deprived plaintiff of a constitutional right. *Balistreri v. Pacifica Police Department*, 901 F. 2d 696, 699 (9th Cir. 1988). In addition, the plaintiff must allege facts showing how each named defendant caused or personally

participated in causing the harm alleged. *Arnold v. IBM*, 637 F. 2d 1350, 1355 (9th Cir. 1981). A suit brought pursuant to § 1983 cannot be based on vicarious liability alone, but must allege that each defendant's own conduct violated the plaintiff's civil rights. *City of Canton v. Harris*, 489 U.S. 378, 385-90 (1989). A plaintiff may not hold supervisory personnel liable under 42 U.S.C. § 1983 for constitutional deprivations under a theory of respondeat superior. *Taylor v. List*, 880 F. 2d 1040, 1045 (9th Cir. 1989).

Thorne's motion for summary judgment on Cause of Action One is based on his contention that plaintiffs have produced no admissible evidence that he personally participated in terminating them for their exercise of free speech. Plaintiffs, in response, argue the general law of liability of state officers under § 1983 without addressing Thorne's personal participation argument. They point to no actual evidence that would raise a genuine issue of fact regarding Thorne's participation in their termination. Their argument appears to seek to impose liability upon Thorne as a supervisor under the doctrine of respondeat superior, which is not applicable in § 1983 actions. Moreover, the only actual statements regarding Thorne in plaintiffs' affidavits have either been stricken for lack of personal knowledge, or are irrelevant to the issue of his personal participation. Accordingly, plaintiffs have failed to state a claim under § 1983 against defendant Throne. His motion for summary judgment as to Cause of Action One will be granted, and this cause dismissed as to Thorne.

In Cause of Action Six, plaintiffs assert a state law claim for wrongful discharge against defendant Thorne. However, this section of the complaint itself makes no factual allegations with respect to Thorne. Further, in opposing summary judgment, plaintiffs have produced no admissible evidence that Thorne acted in any way to discharge Musselman, or even that he knew of the termination. The three internal audit memos from Thorne cited by plaintiffs discuss ferry employees' travel expenses, travel vouchers, and employee reimbursements, and have no relevance to Musselman or his termination. Declaration of Shawn Hart, Exhibit 2, P1106, P1100, P1111.

ORDER
PAGE - 9

Defendant Thorne's motion for summary judgment on Cause of Action Six, the wrongful termination claim, will therefore be granted, and this cause dismissed as to Thorne.

In Cause of Action Seven, plaintiffs assert a claim of breach of contract and breach of the implied duty of good faith and fair dealing against defendant Thorne. This claim is based on the same allegations as were made against defendant Nitchman, namely that these two defendants "allow[ed] management to maintain their active membership in the MEBA [union]." Amended Complaint, ¶ 10.3. The Court previously found no basis for breach of contract claim against Nitchman, and the Court's analysis of that claim applies here. Plaintiffs have stated no facts to overcome that ruling. Defendant Thorne's motion for summary judgment on Cause of Action Seven will therefore be granted, and this cause dismissed as to Thorne.

**B. Defendant Carl Allen**.

Plaintiffs have asserted three causes of action against defendant Carl Allen, chief of staff of the Washington State Ferry *Quinault*. In Cause of Action One, under § 1983, plaintiffs assert with respect to Allen that he "directly participated in the violations of Plaintiffs' rights." Amended Complaint, ¶ 4.2. However, other than Musselman's conclusory allegations that Allen harassed him by not allowing him to use the crew refrigerator, the only evidence to which plaintiffs point in support of this claim are hearsay statements by Allen regarding firing Mussleman. Plaintiff's Response, p. 14. The portions of the Marable and Stell Declarations upon which plaintiffs rely in making this allegation have been stricken. Accordingly, defendant Allen's motion for summary judgment as to Cause of Action One will be granted, and the § 1983 claim dismissed as to defendant Allen.

In Cause of Action Three, plaintiffs assert a claim of negligent infliction of emotional distress against Allen. The Court found in the previous Memorandum Order on Nitchman's motion for summary judgment that plaintiffs had failed to produce objective medical evidence of such distress. The unauthenticated copies of Musselman's medical appointments and prescriptions

in the record appear to indicate that he was under treatment for alcohol dependence and anxiety, but nowhere is there a diagnosis or other objective medical evidence connecting these problems with Allen's treatment of Musselman.  Declaration of Hart, Exhibit 2, P1154-1164, P1172-73. Allen's motion for summary judgment as to the emotional distress claim will therefore be granted, and Cause of Action Four dismissed as to defendant Allen.

In Cause of Action Five, plaintiffs allege that Allen violated the "whistleblower" and other sections of the Washington Law Against Discrimination, RCW 49.60.  Specifically, plaintiffs allege that Allen violated Musselman's rights under this statute.  Amended complaint, ¶ 8.2.  As the Court found previously, in the Order on Nitchman's motion for summary judgment, that Musselman qualifies as a whistleblower under this statute, Allen's motion for summary judgment on this claim will be denied.

**C.  Defendant Ben Broxon.**

Plaintiffs have asserted four claims against defendant Broxon, chief of staff of the Washington State Ferry *Walla Walla*.  In Cause of Action One under § 1983, plaintiffs allege that Broxon "directly participated" in the violation of Newmon's rights.  Specifically, plaintiffs allege that Broxon began harassing Newmon after learning that Newmon had criticized the Special Project as a waste of public funds and started asking questions about it.  The method of harassment was by ordering Newmon to work in a loud engine room, and by issuing the following threat:

> You should not speak about the Special Projects because things can happen to people, things can happen to their family, and their house can get burned down, because it is easy to find out where someone lives.

Amended complaint, ¶ 3.5.

Broxon argues that this claim should be dismissed because plaintiff Newmon has no evidence that Broxon was involved in a Special Project, no evidence that a special project involving a study of lube oil was taking place, and has no evidence to support his claim that, if such

ORDER
PAGE - 11

as study was taking place, it was a waste of public money. However, none of these assertions is relevant to Newmon's § 1983 claim. He does not claim to know that Broxon was involved in the Special Projects; his claim is that Broxon harassed and threatened him for criticizing and questioning the oil lube project.

Broxon also points out that in Newmon's deposition, he stated that the only person he could name as someone to whom he made comments about the special projects was his girlfriend, Jane Ellis. Broxon argues that Newmon's affidavit in opposition to summary judgment contradicts the sworn statements he made at deposition. Defendant correctly asserts that a party may not contradict deposition statements in a later-filed affidavit to avoid summary judgment. "A party cannot create a triable issue of fact, and thus survive summary judgment, merely by contradicting his or her own sworn deposition with a later declaration." *Disc Golf Association v. Champion Discs, Ind.*, 158 F. 3d 1002, 1008 (9th Cir. 1998). However, Newmon's affidavit does not actually contradict the statements at deposition. In the non-stricken portions of his affidavit, Newmon states that he challenged Broxon about the oil lube Special Project ( ¶ 4), that he conducted an investigation by asking questions about the Special Projects ( ¶ 6), and that Broxon told him not to speak about the Special Projects because bad things could happen to him (¶ 7). This does not contradict what Newsom stated in his deposition, because the deposition questions were not framed to elicit answers regarding his investigation or his questions directly to Broxon. Instead, he was asked to name people to whom he commented or complained. Deposition of Bob Newmon, p. 72. Moreover, the complete deposition is not before the Court. For these reasons, the Court declines to find that Newmon's affidavit is a sham or contradictory to his deposition testimony. Broxon's motion for summary judgment on the § 1983 claim shall be denied.

In Cause of Action Three, plaintiffs assert a claim of negligent infliction of emotional distress against Broxon. The Court found in the previous Memorandum Order on Nitchman's motion for summary judgment that plaintiffs had failed to produce objective medical evidence of

ORDER
PAGE - 12

such distress. With respect to Newmon, the Court noted that the single unauthenticated medical report did not raise a genuine issue of material fact. Defendants have asserted no basis for revisiting this ruling. Accordingly, Broxon's motion for summary judgment on Cause of Action Three shall be granted, and this claim dismissed.

In Cause of Action Four, Newmon alleges that Broxon's threats and harassment constituted the state law tort of outrage. Broxon contends that this claim fails for the same reason as the claim of negligent infliction of emotional distress—namely, a lack of objective medical evidence. Broxon also argues that even if Newman's allegations of harassment and threats are believed, his actions do not rise to the extreme level required to constitute the tort of outrage.

The elements of the tort of outrage in Washington State are: (1) extreme and outrageous conduct; (2) intentional or reckless infliction of emotional distress; and (3) actual result to the plaintiff of severe emotional distress. *Haubry v. Snow*, 106 Wash. App. 666, 680 (2001). The conduct in question must be outrageous and extreme, so as to be intolerable in a civilized society. *Id.*; *citing Grimsby v. Samson*, 85 Wash. 2d 52, 59 (1975). When one in a position of authority, such as a supervisor, commits the actions, the claim of outrageous behavior has added impetus. *Contreras v. Crown Zellerbach*, 88 Wash. 2d 735, 740 (1977). The question of whether certain conduct is sufficiently outrageous to constitute a tort is ordinarily one for the jury, but it is initially for the Court to determine whether reasonable minds could differ on the question. *Haubry*, 106 Wash. App. at 680.

Here, the Court does not reach the question of the level of outrageousness of Broxon's conduct, because Newmon's claim is foreclosed by the Court's ruling that he has not provided sufficient objective medical evidence of his emotional distress. *Id.* Accordingly, summary judgment shall be granted as to this claim.

Finally, in Cause of Action Five, Newmon asserts a claim against Broxon under RCW 49.60, the Washington Law Against Discrimination; he asserts that Broxon violated RCW

ORDER
PAGE - 13

49.60.210, which forbids retaliation against a whistleblower by a supervisor. However, the Court has already ruled, in the Nitchman Order, that Newmon has not proven that he is a statutory whistleblower. Memorandum Order, p. 13. Accordingly summary judgment shall be granted to Broxon on this claim.

## CONCLUSION

Accordingly, the Court now rules as follows:

(1) Defendant Thorne's motion for summary judgment (Dkt. # 68) is GRANTED, and all claims dismissed as to him.

(2) Defendant Allen's motion for summary judgment (Dkt. # 69) is GRANTED IN PART and DENIED IN PART. Summary judgment is granted as to Causes of Action One and Three, and these claims are DISMISSED as to defendant Allen. Summary judgment on Cause of Action Five under RCW 49.60 is DENIED, and this claim remains pending for trial.

(3) Defendant Broxon's motion for summary judgment (Dkt. # 70) is GRANTED IN PART and DENIED IN PART. Summary judgment is GRANTED as to Causes of Action Three, Four, and Five as set forth above, and these claims are DISMISSED as to defendant Broxon. Summary judgment on Cause of Action One is DENIED, and this claim remains pending for trial.

With the claims and issues thus narrowed, the Court directs the parties to proceed to mediation as ordered on July 28, 2005.

DATED this 3rd day of August, 2005.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE